UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY SANCHEZ , <br><br>                    Petitioner, <br><br>v. <br><br>KEITH YORDY, Warden, <br><br>                    Respondent. | Case No. 1:15-cv-00006-REB <br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Jeremy Sanchez's Petition for Writ of Habeas Corpus. (Dkt. 1.) Respondent has filed a Motion for Summary Dismissal, arguing that Petitioner's claims are untimely, procedurally defaulted, and/or non-cognizable. (Dkt. 10.) That Motion is now ripe for adjudication. (*See* Dkt. 15, 17.)

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 8.) Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

**MEMORANDUM DECISION AND ORDER - 1**

Accordingly, the Court enters the following Order granting Respondent's Motion and dismissing the Petition with prejudice.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in *State v. Sanchez*, 127 P.3d 212 (Idaho Ct. App. 2005), which is contained in the record at State's Lodging B-4. The facts will not be repeated here except as necessary to explain the Court's decision.

Petitioner was convicted by a jury in the Third Judicial District in Canyon County, Idaho, of conspiracy to commit robbery, robbery, conspiracy to commit first-degree kidnaping, first-degree kidnaping, aggravated battery, and attempted murder.[1] (State's Lodging B-4 at 1.) In brief, Petitioner and his accomplices robbed, kidnaped, cut, stabbed, beat, and nearly killed a woman whose car they had forced off an interstate highway.

Petitioner was sentenced to consecutive fixed life sentences for the robbery, kidnaping, and conspiracy counts, as well as consecutive fixed 15-year terms for aggravated battery and attempted first-degree murder. (*Id*. at 4.) Petitioner appealed. The Idaho Court of Appeals affirmed Petitioner's convictions and sentence in a published opinion. The Idaho Supreme Court denied review, and the remittitur issued on December 23, 2005. (State's Lodging B-7, B-8.)

---

[1]  Petitioner was convicted after his second trial. His first trial ended in a mistrial because the jury could not reach a verdict. (State's Lodging B-4 at 4.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner signed and filed his initial petition for state postconviction relief on October 9, 2006. (State's Lodging C-1 at 3-30.) Counsel was appointed. (*Id*. at 41-42, 44-45.) The state district court summarily dismissed all of Petitioner's postconviction claims other than his claim that trial counsel rendered ineffective assistance by "failing to subpoena credit card records, possible security camera videos, or any eyewitnesses relating to credit card transactions for the purpose of showing that the petitioner did not have use of the victim's property." (State's Lodging C-2 at 181; C-3 at 3.) The trial court denied the remaining claim after an evidentiary hearing. (State's Lodging C-3 at 4-17.)

On appeal, the Idaho Court of Appeals upheld the trial court's denial of the petition for postconviction relief. (State's Lodging D-4.) Petitioner did not seek review with the Idaho Supreme Court, and the remittitur issued on August 27, 2009. (State's Lodging D-5.)

On March 14, 2013—over three years later—Petitioner returned to the state district court with a successive postconviction petition. (State's Lodging E-1 at 4-7.) Petitioner was again appointed counsel. (*Id*. at 28.) The trial court dismissed the successive petition as untimely. (*Id*. at 207-10.) The Idaho Court of Appeals affirmed, the Idaho Supreme Court denied review, and the remittitur issued on November 6, 2014. (State's Lodging F-4; F-7; F-8.)

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner filed his Petition in this Court, at the earliest, on December 30, 2014.[2]

The Petition asserts the following claims:

| | |
|---|---|
| Claim F(a): | Petitioner is not guilty of the crimes of which he was convicted. |
| Claim F(b): | The prosecutor committed misconduct and witness tampering. |
| Claim F(c): | The state knowingly introduced false evidence. |
| Claim F(d): | The prosecutor violated *Brady v. Maryland* by failing to disclose exculpatory evidence. |
| Claim I(a): | Ineffective assistance of trial counsel for failing to object to Petitioner's 30-year consecutive sentence on subject matter jurisdiction grounds. |
| Claim I(b): | Ineffective assistance of trial counsel based on counsel's failure to argue that Petitioner's fixed life term was unlawful on subject matter jurisdiction grounds. |
| Claim I(c): | Ineffective assistance of trial counsel based on counsel's failure to argue merger or to assert a double jeopardy violation. |
| Claim I(d): | Ineffective assistance of direct appeal counsel for not raising claims of ineffective assistance of trial counsel. |
| Claim I(e): | Ineffective assistance of initial postconviction counsel. |
| Claim I(f): | Petitioner's consecutive sentences violate the Double Jeopardy Clause. |

(*See* Dkt. 1.)

---

[2]   *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988) (holding that if a prisoner is entitled to the benefit of the mailbox rule, a legal document is deemed filed on the date a Petitioner delivers it to the prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court); Rule 3(d) of the Rules Governing Section 2254 Cases.

**MEMORANDUM DECISION AND ORDER - 4**

# DISCUSSION

Respondent argues that Petitioner's claims are untimely, procedurally defaulted, or non-cognizable. (Dkt. 10.) The Court agrees that the one-year statute of limitations bars Petitioner's claims; therefore, Respondent's other arguments need not be addressed. Because Petitioner (1) is entitled to statutory tolling for only a portion of the limitations period, (2) is not entitled to equitable tolling, and (3) has not made a colorable showing of actual innocence, the Court will dismiss the Petition with prejudice as untimely.

## 1.     Standards of Law

Rule 4 of the Rules Governing § 2254 Cases provides for summary dismissal of a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court may also take judicial notice of relevant state court records in determining whether to dismiss a petition.[3] Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

The Antiterrorism and Effective Death Penalty Act (AEDPA) generally requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time

---

[3]     The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on August 24, 2015. (*See* Dkt. 9, 11.)

**MEMORANDUM DECISION AND ORDER - 5**

for seeking such review."[4] 28 U.S.C. § 2244(d)(1)(A); *see Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to the AEDPA statute of limitations, which means that the calculation excludes the day the conviction became final, meaning that the statute of limitations period actually consists of 366 days). Thus, the first step in a statute of limitations analysis is determining the date on which the petitioner's conviction became final.

Direct review of a conviction includes the opportunity to file a petition for a writ of certiorari in the United States Supreme Court. The Supreme Court has clarified application of § (d)(1)(A) as follows:

> For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires.

*Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012).

---

[4] Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D):

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**MEMORANDUM DECISION AND ORDER - 6**

Idaho Appellate Rule 14 provides that an appeal from the district court must be filed within 42 days from the date of an appealable order or judgment. Idaho Appellate Rule 118 provides that a petition for review to request that the Idaho Supreme Court review an opinion or order of the Court of Appeals must be filed within 21 days "after the announcement of the opinion or order, or after the announcement of an order denying rehearing, or after the announcement of an opinion on rehearing or after an opinion is modified without rehearing in a manner other than to correct a clerical error." United States Supreme Court Rule 13 provides that a petition for writ of certiorari must be filed with the United States Supreme Court within 90 days of a judgment entered by a state court of last resort. Hence, the failure to file a notice of appeal, petition for review, or petition for writ of certiorari within the applicable time period triggers finality for purposes of § 2244(d)(1)(A).

The one-year statute of limitations can be tolled (or suspended) under certain circumstances. First, AEDPA provides for tolling for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A motion to reduce a sentence that is not a part of the direct review process and that requires re-examination of the sentence qualifies as a collateral review application that tolls the one-year statute of limitations. *Wall v. Kholi*, 131 S. Ct. 1278, 1286-87 (2011). Thus, to the extent that a petitioner properly filed an application for postconviction relief or other collateral challenge in state court, the one-year federal limitations period stops running on the filing date of the state court action and resumes when the action is completed.

**MEMORANDUM DECISION AND ORDER - 7**

The time before a petitioner files an initial application for collateral review in state court, however, does not toll the statute of limitation. *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999) ("AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval."), *abrogated on other grounds as stated in Nedds v. Calderon*, 678 F.3d 777, 781 (9th Cir. 2012). In addition, AEDPA "does not permit the reinitiation of the [federal] limitations period that has ended before the state petition was filed." *Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003). And any postconviction petition or other collateral proceeding that is untimely under state law is not considered properly filed and thus does *not* toll the statute of limitation. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

If, after applying statutory tolling, a petitioner's petition is deemed untimely, a federal court can still hear the claims if the petitioner can establish that "equitable tolling" should be applied to toll the remaining time period. *See Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002) ("[A] court must first determine whether a petition was untimely under the statute itself before it considers whether equitable tolling should be applied."). The limitations period may be equitably tolled under exceptional circumstances. "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). To qualify for equitable tolling, a circumstance must have *caused* a

**MEMORANDUM DECISION AND ORDER - 8**

petitioner to be unable to file his federal petition on time. *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009).

In addition, the statute of limitations is subject to an actual innocence exception. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc). To take advantage of the actual innocence gateway, a petitioner must "demonstrate[] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." Stated another way, a petitioner must show that *every* reasonable juror would vote to acquit.

Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). Although a petitioner asserting actual innocence, as opposed to equitable tolling, to overcome the statute of limitations need not prove diligence, "a court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence." *McQuiggen*, 133 S. Ct. at 1935 (internal quotation marks and alterations omitted).

**MEMORANDUM DECISION AND ORDER - 9**

**2.     Petitioner's Claims Are Barred by the Statute of Limitations**

*A.     The Claims in the Petition Were Not Timely Filed*

     i.     Section 2244(d)(1)(A): Statute of Limitations Triggered on Date Conviction Became Final

The statute of limitations for most of Petitioner's claims began to run on "the date on which the judgment became final." 28 U.S.C. § 2244(d)(1)(A). The Idaho Supreme Court issued the remittitur in Petitioner's direct appeal on December 23, 2005. (State's Lodging B-8.) *See Jakoski v. State*, 32 P.3d 672, 679 (Idaho Ct. App. 2001) (stating that decisions of the Idaho Supreme Court are final when the remittitur is issued). Because Petitioner did not file a petition for writ of certiorari with the United States Supreme Court, his conviction became final 90 days later, on March 23, 2006. *See* U.S.S.Ct. Rule 13. The statute of limitations was triggered on that date and, absent tolling, expired one year later.

     ii.     Section 2244(d)(1)(D): Statute of Limitations Triggered When Factual Predicate Should Have Been Discovered

Though Petitioner's position is not entirely clear, he appears to argue that some of his claims, including Claim F(a) (actual innocence) and at least some of his ineffective assistance of counsel claims, are subject to a different start date for the statute of limitations. (*See* Dkt. 15 at 6-7.) Petitioner states that he asserted these claims in state court within one year "of when the evidence used to support such issues was discovered." (*Id.* at 6.) Under 28 U.S.C. § 2244(d)(1)(D), the statute of limitations for claims that were unknowable when the petitioner's conviction became final begins to run on "the date on

**MEMORANDUM DECISION AND ORDER - 10**

which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence."

In support of his argument that his claims are timely, Petitioner has submitted the affidavit of Kenneth W. Wurdemann, Jr., an accomplice who testified against Petitioner at trial. In the affidavit, Wurdemann recants his trial testimony and claims that he has never even met Petitioner. (*See* Dkt. 15-1.) Significantly, Petitioner presented the same affidavit in state court during his successive postconviction proceedings. Petitioner argued that his claims arose in November 2012 (when Petitioner learned of the existence of the Wurdemann affidavit) or, at the latest, in February 2013 (when Petitioner obtained a copy of the affidavit). (*See* State's Lodging E-1 at 208.)

However, the state district court made a factual finding that Petitioner obtained a copy of "an almost identical affidavit" from the same witness on September 24, 2009. "Thus, the Petitioner had notice of both the existence of the affidavit and the contents at that time," yet still waited three and one-half years to file his successive postconviction petition. (*Id.*) This factual finding is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). Because Petitioner had notice of the affidavit on September 24, 2009, the statute of limitations for any claims based on that affidavit would have expired on September 24, 2010—long before Petitioner filed the instant federal Petition. Thus, even if § 2244(d)(1)(D) governs the commencement of the statute of limitations for some of Petitioner's claims, those claims—like Petitioner's other claims—can be timely only if Petitioner is entitled to sufficient statutory or equitable tolling or if the miscarriage of justice exception applies.

**MEMORANDUM DECISION AND ORDER - 11**

### B. Statutory Tolling

As set forth above, AEDPA's one-year limitations period is tolled for all of the time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). As the Court has found, the statute of limitations for most of Petitioner's claims began to run on March 23, 2006. Petitioner filed his initial state postconviction petition on October 9, 2006. Therefore, the statute of limitations ran un-tolled for 199 days of the limitations period between the date Petitioner's convictions became final and the date he filed his initial postconviction petition. *See Nino*, 183 F.3d 1006. The limitations period was then tolled from October 9, 2006, until the Idaho Court of Appeals issued the remittitur in Petitioner's initial postconviction appeal on August 27, 2009.

At that point, Petitioner had 167 days remaining in the one-year limitations period (366 days minus 199 days). Thus, his federal Petition was due on February 10, 2010 (167 days after August 27, 2009). Petitioner's successive state postconviction petition, which was not filed until 2013, does not serve to toll any portion of the statute of limitations, for two independent reasons: (1) the limitations period expired before the successive petition was filed, *see Ferguson*, 321 F.3d at 822, and (2) the successive petition was untimely in any event, *Pace*, 544 U.S. at 414. Accordingly, even with the benefit of statutory tolling, the December 30, 2014 Petition was filed more than three years too late.

With respect to the claims that are subject to the §2244(d)(1)(D) triggering date, the statute of limitations began to run, as noted previously, on September 24, 2009. At that point, Petitioner's initial postconviction proceedings had already been completed.

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner did not file his successive petition until March 14, 2013, long after the subsection (d)(1)(D) limitations period expired on September 24, 2010. Therefore, even if the successive postconviction petition had been timely, which it was not (*see* State's Lodging E-1 at 208), it could not have served to toll the limitations period.

For these reasons, all of Petitioner's claims must be dismissed as untimely unless Petitioner can establish that he entitled to equitable tolling or that he is actually innocent.

### C.   *Equitable Tolling*

As noted above, equitable tolling will apply if (1) the petitioner has pursued his rights diligently and (2) extraordinary circumstances stood in his way and prevented a timely filing. *Holland*, 560 U.S. at 649. "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and alteration omitted). As to the diligence issue, the Supreme Court has held that a petitioner who "waited years, without any valid justification" to bring his postconviction claims in state court, and then waited "five more months after his [postconviction] proceedings became final before deciding to seek relief in federal court," had not acted diligently in pursuing his rights. *Pace*, 544 U.S. at 419.

Petitioner does not identify any extraordinary circumstances that would justify the application of equitable tolling in this case. Nor does Petitioner explain how any circumstances beyond his control "made it *impossible* to file a petition on time." *Ramirez*, 571 F.3d at 997 (emphasis added) (internal quotation marks and alteration omitted).

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner has simply not met his burden of showing that extraordinary circumstances beyond his control prevented him from filing a timely habeas petition.

### D. Actual Innocence

The Court now considers whether, in light of the evidence Petitioner has submitted, every reasonable juror would vote to acquit. *See McQuiggin*, 133 S. Ct. at 1931-32; *Lee*, 653 F.3d at 937. If so, then Petitioner's claims may be heard on the merits despite their untimeliness.

Petitioner's actual innocence claim is based on the affidavit of Kenneth W. Wurdemann, Jr. (*See* Dkt. 15-1.) That affidavit recants Kenneth Wurdemann's trial testimony, which the Idaho Court of Appeals described as follows:

> Kenneth testified that he had been in a bar on the night in question, where he observed [Petitioner], John [Wurdemann], and a woman. Kenneth asked his brother John for a ride home, entered a vehicle with John, [Petitioner] and the woman, and fell asleep. Kenneth testified that he awoke at a rest stop and that [Petitioner], John and the woman entered the restrooms while he waited at the vehicle. Kenneth indicated that they left the rest stop, continued down the freeway, and he fell asleep again. Kenneth awoke to find the vehicle and the victim's car stopped along the freeway and his companions outside of the vehicle. Kenneth then drove the vehicle while the others followed with the victim in her car. Kenneth exited the freeway and parked off a dark country road in a field. Kenneth testified that he hit the victim with a baseball bat out of fear of repercussion from his companions if he refused to participate. Kenneth also testified that, after leaving the scene, [Petitioner] and John decided to return. Kenneth testified he observed that the victim's car was set on fire but did not see who started it.

(State's Lodging B-4 at 4.)

**MEMORANDUM DECISION AND ORDER - 14**

Wurdemann now claims in his affidavit that this "entire version of [the] events was fabricated." (Dkt. 15-1 at ¶10.) He asserts that the prosecutor "manipulated and coerced [him] into making detailed claims of how the attack on [the victim] occurred; and whose idea it was to burn [her] car," and that the prosecutor "had to recap the story three, four, five times to make sure [Wurdemann] had it right." (*Id*. at ¶¶7, 10.) Wurdemann, who was offered a favorable plea deal in exchange for his testimony, also claims that he received other benefits for testifying, such as being transferred to a different jail.

For several reasons, Petitioner has not met his heavy burden of establishing that, in light of Wurdemann's recantation, every reasonable juror would have found Petitioner not guilty. First, the mere fact than an accomplice has recanted his trial testimony against a defendant does not establish actual innocence. Petitioner has not proffered any reason why Wurdemann's affidavit should be deemed any more credible than his trial testimony. Second, Petitioner has not offered any scientific or documentary evidence to support his claim. Finally, Wurdemann's testimony was not the only evidence against Petitioner. The victim identified Petitioner, in court, as one of her attackers. (State's Lodging B-4 at 4.) Therefore, even if Wurdemann had not testified, there was still sufficient evidence for a reasonable juror to conclude Petitioner was guilty beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, the Court concludes that all of the claims in the Petition are untimely. Therefore, the Petition must be dismissed with prejudice.

**ORDER**

**IT IS ORDERED:**

1. Petitioner's Request for Additional Time to Respond to Motion for Summary Dismissal (Dkt. 13) is GRANTED.

2. Respondent's Motion for Extension of Time to File Reply (Dkt. 16) is GRANTED.

3. Respondent's Motion for Summary Dismissal (Dkt. 10) is GRANTED, and the Petition is DISMISSED with prejudice as untimely.

4. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: **January 19, 2016**

_____
Honorable Ronald E. Bush
United States Magistrate Judge